UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| K.S., parent of minor O.S.; C.S., parent of minor O.S., <br><br>Plaintiffs, <br><br>v. <br><br>NORTH THURSTON SCHOOL DISTRICT, <br><br>Defendant. | Case No. 3:25-cv-05195-TMC <br><br> ORDER ON MOTION FOR ATTORNEY'S FEES |

## I.  INTRODUCTION

Plaintiffs K.S. and C.S. ("the Parents") prevailed in an administrative proceeding brought under the Individuals with Disabilities Education Act ("IDEA") on behalf of their minor son, O.S. They brought this civil suit to recover the attorney's fees they incurred during the administrative action and now move for summary judgment on the amount of fees they are owed. Dkt. 7. The Parents contend they are owed a total of $112,967.02 in fees and costs. *Id.* at 2. Defendant North Thurston School District ("the District") concedes that the Parents are entitled to attorney's fees but disputes the amount. Dkt. 11. The District argues that the Parents seek too high an hourly rate for their attorney and that he expended an unreasonable number of hours on the administrative proceeding. *See id.* at 1. The District maintains that the Court should award no

ORDER ON MOTION FOR ATTORNEY'S FEES - 1

more than $21,151.00 in fees and costs. *Id.* at 15. The Court GRANTS the Parents' motion in part as set forth below.

## II.    LEGAL STANDARD

IDEA provides that "the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i), (i)(I). "A prevailing party is one who succeeds on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Van Duyn ex rel. Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811, 825 (9th Cir. 2007) (alteration and internal quotation marks omitted) (quoting *Parents of Student W. v. Puyallup Sch. Dist., No. 3*, 31 F.3d 1489, 1498 (9th Cir. 1994)). "The success must materially alter the parties' legal relationship, cannot be de minimis and must be causally linked to the litigation brought." *Id.* It is undisputed that the Parents were a prevailing party in the administrative proceeding. *See* Dkt. 11 at 1.

IDEA requires that the fees awarded "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C). To determine the amount of fees awarded, the Court applies the same standard used for fee-shifting under 42 U.S.C. § 1988. *Aguirre v. L.A. Unified Sch. Dist.*, 461 F.3d 1114, 1121 (9th Cir. 2006) (holding that *Hensley v. Eckerhart*, 461 U.S. 424 (1983) and its progeny apply to fee awards under IDEA). The Court starts with "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," a calculation known as the lodestar. *Hensley*, 461 U.S. at 433; *Chambers v. Whirlpool Corp.*, 980 F.3d 645, 665 (9th Cir. 2020).

But the number of hours reasonably expended must also consider the degree of success obtained. *Hensley*, 461 U.S. at 434. "Under *Hensley*, when a case involves claims 'based on

ORDER ON MOTION FOR ATTORNEY'S FEES - 2

different facts and legal theories,' the plaintiff is not entitled to fees for an unsuccessful claim 'that is distinct in all respects from his successful claims.'" *Edmo v. Corizon, Inc.*, 97 F.4th 1165, 1169 (9th Cir. 2024) (citation omitted) (quoting *Hensley*, 461 U.S. at 434, 440). "In sharp contrast, if a lawsuit consists of related claims—with similar legal theories or a 'common core of facts'—then the court proceeds to the second step, where the 'most critical factor is the degree of success obtained.'" *Id.* (quoting *Hensley*, 461 U.S. at 435–36). "The measure of success is the 'overall relief obtained,' not the success of individual claims." *Id.* (quoting *Hensley*, 461 U.S. at 435). "If the plaintiff achieves a high degree of success, then under the *Hensley* rule, time spent on unsuccessful claims may be included in the lodestar calculation." *Id.* "The district court has broad discretion in calculating attorneys' fees." *Id.* at 1168.

Under Federal Rule of Civil Procedure 54(d)(2)(C), when ruling on a motion for attorney's fees, the Court "must find the facts and state its conclusions of law as provided in Rule 52(a)," meaning "the court must find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a)(1), 54(d)(2)(C). Although the Parents' motion is styled as one for summary judgment, it is in substance a fee petition and the Court will treat it as one. The parties appear to agree that the Court may decide the question of attorney's fees on the papers.

### III.   FINDINGS OF FACT

To calculate the lodestar amount, the Court relies on the following findings of fact.

1. The IDEA due process hearing occurred on October 9, 2024 and October 14, 2024. Dkt. 12-1 at 1. The parties submitted post-hearing briefs on December 9, 2024. *Id.* The Administrative Law Judge ("ALJ") issued a written decision on January 7, 2025. *Id.* at 1, 28.

2. The Parents were represented by one attorney, Alex Gerard. *Id.* at 1. The District was represented by two attorneys, Lynette Baisch and Sharan Singh. *Id.*

ORDER ON MOTION FOR ATTORNEY'S FEES - 3

3. Eight witnesses testified at the hearing. *Id.* at 2. But one witness called by the Parents (Dr. Steven Phillips) refused to respond to questions on cross-examination, and the ALJ struck his testimony. *Id.* at 2–3.

4. At the due process hearing, the ALJ considered whether the District violated the IDEA and denied minor O.S. ("the Student") a free and appropriate public education ("FAPE") by:

   a. Failing to provide adequate transportation to his transfer schools, causing the Student to miss schooling each week during the 2022–2023 and 2023–2024 school years;

   b. Failing to provide related services including, but not limited to, transportation to transfer schools where the Student is first dropped off and last picked up, causing Student to miss schooling each week during the 2022–2023 and 2023–2024 school years;

   c. Refusing to minimize the Student's resource depletion as recommended by medical professionals, causing the Student to miss schooling each week during the 2022–2023 and 2023–2024 school years;

   d. Failing to provide a nurse on the Student's transportation to the transfer school within the District's boundaries, causing the Student to miss schooling each week during the 2022–2023 and 2023–2024 school years; and

   e. Failing to provide a nurse at the Student's transfer school as required by his individualized education program (IEP), causing the Student to miss schooling each week during the 2022–2023 and 2023–2024 school years. *Id.* at 3.

5. The Parents requested four remedies:

   a. An order requiring the District to provide the Student with transportation to any school he is accepted into within the District, transfer school or home school, and to have such requirements added to his IEP;

   b. An order requiring a school nurse to be present with the Student while he is using District provided transportation to transfer or home school and to have such requirements added to his IEP;

   c. An order requiring the District to provide the Student with compensatory hours equal to the hours missed; [and]

   d. An order requiring a school nurse to be present at any school, transfer or otherwise, that the Student has been accepted into. *Id.* at 4.

ORDER ON MOTION FOR ATTORNEY'S FEES - 4

6. The ALJ ruled in favor of the District on one claim, and partially in favor of the Parents and partially in favor of the District on the four remaining claims.

   a. On "Issue A," the ALJ concluded that while "the IEPs of November 18, 2022, and September 7, 2023 included specialized transportation as a related service," at the time the IEPs were developed "the District did not have information that established, as a medical need, the Student required the shortest travel time and closest school to home as possible." *Id.* at 18. "Therefore, the District established by a preponderance of the evidence that it did not materially fail to implement the Student's IEPs with respect to transportation services during the time periods at issue in this case, beginning January 2023 through the end of the 2023–2024 school year." *Id.* at 18–19.

   b. On "Issue B," the ALJ concluded that before the Student's IEP meeting on February 23, 2024, "the District had sufficient information from the Student's providers to support his attending the school located as close to home as possible." *Id.* at 19. The District thus should have amended his IEP and reassigned his school to make him "entitled to transportation" there, and "[t]he failure to do so was not reasonable and deprived the Student of a FAPE because he was unable to access school for a substantial number of days during the 2023–2024 school year." *Id.* at 20.

   c. On "Issue C," the ALJ similarly concluded that the District had denied the Student a FAPE (beginning February 23, 2024 through the end of the 2023–2024 school year) by failing to amend his IEP to require placement at a school as close to his home as possible. *Id.* at 22.

   d. On "Issue D" and "Issue E," the ALJ concluded that the District "did not violate the IDEA by failing to provide the Student a nurse at [the transfer school] or on the bus during the 2022–2023 school year" because the Student "was not entitled to transportation services to [the transfer school]" and "the District did not have medical information that indicated the Student required a nurse at school or on the bus" during that year. *Id.* at 23. During the 2023–2024 school year, however, the ALJ concluded that the District denied the Student the opportunity to receive a FAPE beginning February 23, 2024 through the end of the school year "due to not providing a nurse on the bus." *Id.* at 23–24.

7. For remedies, the ALJ ordered:

   a. That the District "add placement of the Student at the school as close as possible to his home to his IEP." *Id.* at 24.

   b. That the District provide 26 hours of compensatory education to Student, "one hour for each day missed" between February 23, 2024 and the end of the 2023–2024 school year. *Id.* at 24–25.

8. All of the Parents' claims in the administrative proceeding were related claims that had similar legal theories and a common core of facts. All claims arose from the risks posed by lengthy transportation to school due to the Student's diagnosis of Dravet syndrome, an "encephalopathic myoclonic seizure disorder resulting in seizures that are difficult to prevent even with medication," and what school reassignment or transportation services were necessary to the Student's IEP given those risks. *See id.* at 4–5.

9. Although the District prevailed on one issue before the ALJ and prevailed partially on the other issues, based on the remedies ordered by the ALJ, the overall relief obtained shows the Parents achieved a high degree of success. They obtained both compensatory education and, more importantly, an addition to the Student's IEP that would require placement of the Student at a school as close as possible to his home. The latter is the core relief that the Parents were seeking throughout the parties' dispute.

10. The District does not challenge .6 hours billed by attorney Matthew Smith at the rate of $460/hour; 2.5 hours billed early in the case by Mr. Gerard at the rate of $260/hour; or .5 hours billed for the initial consultation by Mr. McBroom at the rate of $260/hour. *See* Dkt. 11; Dkt. 7-1 at 9, 15–16. This amounts to a total of $1,056 in unchallenged fees.

11. The District challenges the $460 hourly rate sought by Mr. Gerard for the remainder of time billed to the case—a total of 242.9 hours. Dkt. 11 at 10–11; *see* Dkt. 7-1 at 2, 6–17. Gregory McBroom, the managing partner of Mr. Gerard's law firm Smith McBroom, attests that $460 is Mr. Gerard's standard hourly rate. Dkt. 7-1 at 3. Mr. Gerard was admitted to the Washington Bar in 2022. *Id.*

ORDER ON MOTION FOR ATTORNEY'S FEES - 6

12. To support the reasonableness of Mr. Gerard's rate, the Parents submit fee declarations filed by civil rights lawyers in other cases in federal court and orders awarding fees in other cases. *See id.* at 19–156. But for attorneys with experience comparable to Mr. Gerard, those documents only support reasonable rates for associates of $275 to $400. *Id.* at 52, 60. And the only declaration concerning an attorney whose practice focuses on IDEA establishes a rate of $410–$450 for an attorney with 20+ years of experience. *Id.* at 67–75. The Court finds that $460/hour is unreasonable for Mr. Gerard and that the record supports a reduction of his hourly rate to $350/hour.

13. The District also challenges the overall reasonableness of the 242.9 hours expended by Mr. Gerard on the case. Dkt. 11 at 12. But rather than identifying specific areas of overbilling or discussing the facts of this case and the skill required to litigate it, the District simply points to other IDEA cases where attorneys billed less. *See id.* That is insufficient to show that the hours expended here were unreasonable. The Court also notes that the District has not shared the hours expended by its own attorneys, and that the District was represented by two attorneys at the due process hearing while the Parents only had one.

14. Nor does the record support a finding that the Parents unreasonably protracted the final resolution of the controversy by failing to respond to the District's settlement offer. *See id.* at 13–14. Counsel for the Parents provided an accounting of his fees to initiate those discussions. *See* Dkt. 12-1 at 39. Counsel's determination that the District's offer was too low to engage further and instead the Parents should seek a fee award from the Court was not unreasonable. In contrast, the record shows

ORDER ON MOTION FOR ATTORNEY'S FEES - 7

that the District could have avoided the litigation entirely by simply amending the Student's IEP. *See id.* at 1–28.

15. Finally, the District specifically challenges 16 hours billed to draft a brief opposing a motion to strike one of the Parents' witnesses at the due process hearing, who refused to answer questions on cross-examination. *See* Dkt. 11 at 15. The Court agrees this time was not reasonably expended and will reduce the lodestar by 16 hours.

16. With that reduction, the Court finds that the remaining 226.9 hours billed by Mr. Gerard were reasonable. Applying a reasonable hourly rate of $350/hour, the lodestar for Mr. Gerard's time is $79,415. With the addition of the $1,056 in unchallenged fees, the total lodestar is $80,471. No additional adjustments to the lodestar are necessary.

17. The District has not challenged the $177.02 in costs sought by the Parents. *See* Dkt. 7 at 2. The Court finds this amount is reasonable.

## IV.   CONCLUSIONS OF LAW

1. It is undisputed that the Parents were a prevailing party in the administrative proceeding.

2. The claims brought by the Parents in the IDEA due process hearing were related claims based on similar legal theories and arising from a "common core of facts." *Edmo*, 97 F.4th at 1169 (quoting *Hensley*, 461 U.S. at 435).

3. Because the overall relief obtained shows that the Parents achieved "a high degree of success, then under the *Hensley* rule, time spent on unsuccessful claims may be included in the lodestar calculation." *Edmo*, 97 F.4th at 1169.

4. The Court approves a reduced reasonable hourly rate for Alex Gerard of $350. *See* 20 U.S.C. § 1415(i)(3)(F)(ii).

5. The Court reduces the lodestar by 16 hours for time that was "excessive considering the nature of the action or proceeding." *See* 20 U.S.C. § 1415(i)(3)(F)(iii).

6. The Parents did not unreasonably protract the final resolution of the controversy. *See* 20 U.S.C. § 1415(i)(3)(F)(i).

7. The lodestar amount of attorney's fees is $80,471.

8. The lodestar amount is reasonable and there is no basis for further adjustment upward or downward.

9. The Court awards the Parents $80,471.00 in attorney's fees.

10. The Court awards the Parents their requested costs of $177.02.

## V.    CONCLUSION

Plaintiffs' motion for attorney's fees (Dkt. 7) is GRANTED IN PART and DENIED IN PART as set forth above. Judgment shall be entered in favor of Plaintiffs in the total amount of $80,648.02. The Clerk is respectfully requested to close the case.

Dated this 14th day of November, 2025.

Tiffany M. Cartwright
United States District Judge